■ MICHAEL J. KAUFMAN, Appellant, v. REPUBLIC INSURANCE COMPANY, Respondent.— In an action upon an insurance policy to recover a loss due to a burglary, plaintiff appeals from an order of the Supreme Court, Westchester County, dated April 4, 1973, which granted defendant's motion to dismiss the action on the ground of untimely commencement of action (CPLR 3211, subd. [a], par. 5). Order affirmed, with $20 costs and disbursements. No opinion. Martuscello, Acting P. J., Latham and Christ, JJ., concur; Benjamin, J., dissents and votes to reverse and deny the motion, with the following memorandum, in which Gulotta, J., concurs: Plaintiff commenced this action to recover under a policy of burglary insurance 18 months after the expiration of the 12-month limitation period contained in the policy. Defendant's motion to dismiss under CPLR 3211 (subd. [a], par. 5) was granted. The issue is whether the alleged conduct of defendant either constituted a waiver of the limitation period or was such that defendant is now estopped from raising the limitation period as a defense. The complaint alleges that defendant's continuing negotiations during and beyond the one-year period from the date of loss induced plaintiff to rely on defendant's conduct as a waiver and estoppel. In its supporting papers, defendant recounted the sequence of events. The burglary was discovered when plaintiff, a physician, brought his wife home from a hospital on July 27, 1970. The police were called, defendant was notified and a list of the stolen property (amounting to some $17,500), together with receipts and bills, was submitted by plaintiff to defendant's agent. In December, William Hudson, defendant's representative, offered plaintiff $2,000 in settlement, but the offer was rejected. In January, 1971 plaintiff's attorneys informed Hudson, by letter, of their retainer by plaintiff. In February, 1971 a letter from Hudson repeated the offer of " $2,000 without prejudice ". On June 2, 1971, approximately 10 months after the loss, one of plaintiff's attorneys wrote to Hudson, explaining that he had been hospitalized with major surgery, rejecting the $2,000 offer, requesting photostats of the bills which plaintiff had submitted to Hudson and offering to substantiate any of the items objected to. In April, 1972 plaintiff's attorneys complained in a letter to the State Insurance Department that defendant had not responded to a demand they had made on February 29, 1972 (approximately 19 months after the loss) for the appointment of an appraiser. After some further correspondence and a hearing, on September 28, 1972, the Insurance Department informed plaintiff's attorneys that it could not enforce the appraisal clause of the policy because defendant had reasonable grounds to challenge the alleged loss of various items not listed in the police report but reported as stolen to defendant. The letter concluded: " We realize that the statute of limitations now bars the plenary action and therefore we directed the insurance carrier to continue to make its last settlement offer of $2,000 available to you." In his opposing affirmation, one of plaintiff's attorneys alleged that shortly after the June 2, 1971 letter, and still within the one-year period of limitation, he had a number of telephone conversations with Hudson continuing until February 29, 1972; he told Hudson negotiations could be expedited

if Hudson would send him photostats of the bills submitted to defendant by plaintiff before the latter retained counsel; he repeated each time that it would take months to authenticate the claim without the photostats; Hudson refused to mail them or to be more specific as to what items were needed for further authentication; Hudson merely said that when the attorney had all the necessary documents he should call Hudson and Hudson was sure defendant would then increase its token offer of $2,000; and it took months to get the requested information. On February 29, 1972, 19 months after the loss, plaintiff's attorneys sent Hudson a detailed list of the 34 allegedly stolen items, together with either duplicate bills or, in the case of gifts, the names of the donors. In its reply affirmation, defendant made no reference whatsoever to the alleged telephone calls. Defendant merely emphasized the absence of any correspondence from it after February 8, 1971. The moving papers contain no affidavit from Hudson, the agent who represented defendant from the inception of the loss throughout its negotiations with plaintiff and his attorney. It is not denied that plaintiff's home was burglarized and that he and his wife suffered a substantial loss which was covered by the policy, that they properly reported the loss to the police and to defendant, that plaintiff submitted to defendant the receipts and original bills of sale for the stolen items and that he rejected a $2,000 offer from Hudson and engaged attorneys who informed Hudson of their retainer, all within six months of the loss. It is not denied that one of plaintiff's attorneys wrote to Hudson, explaining that his silence for four months was due to illness and offering to substantiate any of the items objected to. Nor is it denied that the attorney and Hudson then negotiated by telephone over a period of eight or nine months at the end of which the attorney sent Hudson a highly detailed list of the stolen items with duplicate bills. Yet from this bare outline, and in the absence of any affidavit from Hudson, the majority spells out laches. The majority thus chooses to ignore the fact that this sequence of events is equally consonant with waiver or estoppel, that this conduct would be the natural consequence of Hudson's alleged representations and that the delay in bringing suit may have been a natural consequence flowing from the tenor and surrounding circumstances of the negotiations. Without knowledge of the circumstances which enveloped these negotiations, it is impossible to determine whether the attorney was in fact neglectful. The Insurance Department's direction that defendant pay the $2,000, offered in settlement "without prejudice" six months after the loss, would indicate recognition by the Insurance Department that the claim should not in equity be time-barred. The opposing papers make much of the absence of written communication from defendant at any time later than six months after the loss. This argument ignores the extensive use of the telephone in modern practice. In affirming the order of Special Term granting defendant's motion to dismiss the complaint, the majority of this court has decided that the alleged negotiations do not constitute waiver and estoppel as a matter of law. In my opinion, a plenary trial of the facts and circumstances is required before such a determination may be made. It could be held, after trial, that these telephone calls and continuing negotiations beyond the expiration of the 12-month limitation period misled or lulled plaintiff into inactivity and constitute a waiver or estoppel.